IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

NATIONAL CITY BANK f/k/a
NATIONAL CITY BANK OF
PENNSYLVANIA,

      Plaintiff,

v.

AH RENTAL PROPERTIES, LLC,
AMERICAN HOMES BY UNITED
BUILDERS, LLC, MILLS FARM, L.L.C.,
AH LAND HOLDINGS, LLC f/k/a AH
LAND DEVELOPMENT, LLC,
DEEPINDER SINGH GREWAL, JOHN E.
PETRY, ROBERT L. PETRY, AND
HARINDER SIDHU.

      Defendants.

Civil Action No.: 07 - 00110 - JPB

U.S. DISTRICT COURT
FILED AT WHEELING, WV
SEP - 6 2007
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

## ORDER OF COURT APPOINTING RECEIVER

AND NOW, this 5th day of September, 2007, upon consideration of the Emergency Motion of National City Bank, successor by merger on July 22, 2006 with National City Bank of Pennsylvania ("Lender"), for Appointment of a Receiver (the "Motion"), having come on to be heard, it is hereby ORDERED, ADJUDGED and DECREED that the Motion is granted as follows:

    A.    **Findings of Fact and Law Relating to Appointment of Receiver.**

    1.    AH Rental Properties, LLC ("AH Rental") is indebted to National City Bank, successor by merger on July 22, 2006 with National City Bank of Pennsylvania (the "Lender"), pursuant to that certain Construction Loan Agreement, made as of July 22, 2005 and effective as of August 2, 2005 (the "AH Rental Loan Agreement"), which debt is secured by, *inter alia*, a Credit Line Deed of Trust, Assignment of Leases and Rents, Security Agreement,

Financing Statement and Fixture Filing dated as of July 22, 2005 (the "AH Rental Deed of Trust").

2. Mills Farm, L.L.C ("Mills") is indebted to the Lender pursuant to that certain Acquisition Loan Agreement, made as of August 16, 2006 and effective as of August 17, 2006 (the "Mills Loan Agreement"), which debt is secured by, *inter alia*, Credit Line Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing dated as of August 16, 2006 (the "Mills Deed of Trust").

3. AH Land Holdings, LLC f/k/a AH Land Development, LLC ("AH Land") is indebted to the Lender pursuant to that certain Acquisition Loan Agreement, effective as of June 16, 2005 (the "AH Land Loan Agreement"), which debt is secured by, *inter alia*, a Credit Line Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing dated as of June 16, 2005 (the "AH Land Deed of Trust").

4. AH Rental, Mills and AH Land (collectively, the "Entity Defendants") are in default under the AH Rental Loan Agreement, the Mills Loan Agreement and the AH Land Loan Agreement respectively.

5. Among other things, the Entity Defendants granted to the Lender the following first liens on the following real estate (collectively, the "Real Estate"):

| Borrower | Real Estate |
|---|---|
| AH Rental | Towns at Will Tree Apartment Complex, Needy Road, Berkeley County, West Virginia as more fully described in the AH Rental Deed of Trust ("Apartment Complex"). |
| Mills | Five undeveloped lots consisting of approximately 5.4871 acres at Opequon Lane, Gerrardstown District, Berkeley County, West Virginia as more fully described in the Mills Deed of Trust ("Mills Project"). |
| AH Land | Approximately 82.12 acres of undeveloped land located at Tavern Road and Interstate 81 in Martinsburg, West Virginia, Berkeley |

County as more fully described in the AH Land Deed of Trust ("Town Center Project").

6. In addition, the Entity Defendants granted to Lender a first lien on certain other property of the Entity Defendants, including the improvements, equipment, leases, rents and Other Property (collectively, the "Other Collateral" and together with the Real Estate, the "Collateral").

7. Service of the Motion was properly made upon all Defendants.

8. The Entity Defendants are currently operating at a loss and are unable to meet their current obligations as they become due.

9. The Entity Defendants have no working capital upon which to provide for the security or maintenance for their assets.

10. The appointment of a receiver for the Collateral is necessary to preserve the Collateral and to liquidate the same in an orderly manner.

11. Defined terms herein are the same as set forth in the Motion unless otherwise noted.

B. **Appointment of Receiver.**

12. Effective as of 11:59 p.m. on September 5, 2007 (the "Effective Date"), the appointment of Compass Advisory Partners, LLC as Receiver (the "Receiver") for the Collateral for a period commencing on the date of this Order and ending upon termination of such appointment by further Order of Court, is hereby confirmed. Notwithstanding the foregoing, the Receiver shall have no obligation to administer any pension, profit sharing, 401(k), health, insurance or other employee benefit plans.

13. The Receiver shall serve without bond, provided that the Receiver will well and truly perform its duties, shall account to the Lender on a monthly basis and to the Court on a quarterly basis for all of the monies and properties which come into its hands and shall abide by and perform all of the things which it shall be required to do under this Order.

14. The Receiver is appointed hereunder for the benefit and protection of the rights and interests of the Lender.

15. The Receiver will be compensated at hourly rates ranging from minimum wage to $315 per hour for services provided by the Receiver and those employed by the Receiver. The Receiver will also be reimbursed for expenses incurred in the performance of the Receiver's duties. The Receiver and those employed by the Receiver will furnish the Lender and other interested parties with copies of their invoices for services rendered and costs incurred on a monthly basis.

16. The Receiver is authorized to conduct investigations of, and analyses concerning, the operation and value of the Collateral and have the authority, in its discretion, to liquidate the Collateral or portions of the Collateral. The Receiver shall have all necessary powers to manage the Collateral including, without limitation, the following powers and responsibilities: (a) to take possession of the Collateral and all personalty related thereto, including without limitation, all related books, records, bank accounts, keys, combinations for locks or other access information, or which relate in any manner to the management or operation of all or any portion of the Collateral, (b) to direct Entity Defendants, their equity owners, officers, agents, employees or other representatives immediately to turn over and deliver or cause to be delivered to the Receiver or his designee all personalty which relates in any manner to the management or operation of the Collateral including, without limitation, all keys, combinations

for locks or other access codes, books, records, accounts, operating statements, reserve accounts and the like pertaining to the operation of the Collateral, (c) subject to the rights and interests for the benefit of the Lender and other lienholders, to sell all or any portion of the Collateral and to do all acts and things necessary or advisable in connection with such sale(s), (d) to negotiate all bills, drafts, notes or other instruments in the name of the Entity Defendants, (e) subject to the rights and interests for the benefits of the Lender and other lienholders, to take such steps with respect to the outstanding accounts payable and the status of operation of the Collateral in order to maintain, preserve, and protect the Collateral including, without limitation, to discern the status of the outstanding accounts payable and to settle any such accounts that the Receiver or its designee deems necessary and the power to demand, collect and receive from all present and future account debtors, all sums now due and unpaid or which hereafter shall become due with respect to or arising out of the Collateral during the pendency of the receivership authorized hereby, (f) to employ such counsel, accountants or other professionals, as may be necessary in order to carry out its duties as Receiver and to preserve, maintain and liquidate the Collateral, (g) to conduct discovery, provide notice, pursue claims, cooperate, negotiate, and otherwise take all steps necessary to recover or obtain coverage from any entity relating to (1) the acts, conduct, property, liabilities, or financial condition of the Entity Defendants as it relates to the Collateral, or (2) any other matter or item that may affect the Receiver's administration of the Collateral; (h) subject to the rights and interests of the Lender and the other lienholders, to commence and prosecute such actions at law or in equity that the Receiver deems necessary to fulfill its duties to liquidate or preserve the Collateral, (i) subject to the rights and interests for the benefit of Lender and the other lienholders, to commence and prosecute such actions at law or in equity that the Receiver deems necessary to fulfill its duties to liquidate or preserve the Collateral, (j) subject to

5

the rights and interests for the benefit of Lender and the other lienholders to determinate or abrogate any or all agreements, contracts, understandings or commitments entered into by the Entity Defendants with respect to the Collateral, to the extent permitted by applicable law, (k) to open new accounts with, or negotiate, compromise or otherwise resolve the Entity Defendants' existing obligations to utility companies or other service providers or suppliers of goods and services to the Entity Defendants to otherwise enter into such agreements, contracts or understandings with such utility companies or other service providers or suppliers as are necessary to maintain, preserve and protect the Collateral, (l) to open new bank accounts with respect to the Receiver or its designee's management and liquidation of the Collateral, (m) to secure such monies as the Lender may be willing to advance for preservation and maintenance of the Collateral, including current costs of repairs and general maintenance, security, utilities, insurance and other necessary services, and (n) to apply to this Court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill its duties. All such monies advanced by the Lender following appointment of the Receiver for the preservation and maintenance of the Collateral together with interest at the rate of ten percent (10%) per annum thereon, shall be repaid, to the extent feasible, from the revenues generated from the Collateral whether such revenues are generated before, during or after the receivership. Unless otherwise stated herein, any sales or dispositions by the receiver shall be subject to any other liens of record.

17. The Receiver shall be authorized to market the Real Estate for sale by a Trustee under the AH Rental Deed of Trust, Mills Deed of Trust and AH Land Deed of Trust. Lender shall be permitted to proceed with a Trustee's sale under West Virginia Law at any time notwithstanding the receivership, and the Receiver shall at all times cooperate with such a sale.

18. The Receiver may sell the Apartment Complex and Mills Project on terms acceptable to Lender in any private or public sale free and clear of all liens, with the liens attaching to all sale proceeds, if any, in the same priority as they exist on the date of the sale, with the cash sale proceeds, if any, distributed to lienholders according to their respective priority. Lender or its designee shall be entitled to credit bid its debt in any such sale. The Receiver shall give at least 10-days written notice of any such proposed sale to the Entity Defendants and all guarantors of the indebtedness under the AH Rental Loan Agreement and the Mills Loan Agreement.

19. The Receiver may only sell the Town Center Project on the following terms and conditions.

    A. The Receiver shall schedule a public auction on at least 10-day written notice to all lienholders and the Entity Defendants.

    B. Lender or its designee may credit bid its total indebtedness under the AH Land Loan Agreement at the sale.

    C. Lienholders with liens subordinate to the liens of Lender shall be entitled to credit bid at the sale so long as any such subordinate lienholder which is the winning bidder shall prior to closing on the sale, have first paid Receiver cash in an amount equal to the total indebtedness due and owing Lender under the AH Land Loan Agreement.

    D. If a third-party bidder purchases the Town Center Project at auction, liens shall attach to the sale proceeds in the same priority as they existed as of the sale and shall be distributed to each lienholder accordingly.

20. All such monies advanced by the Lender shall be secured by and under the parties' AH Rental Loan Documents, Mills Loan Documents and AH Land Loan Documents and this Order of Court, by which the Lender is and will continue to be secured in all the Collateral, including but not limited to such accounts, cash, chattel paper, collections, contracts, copyrights, documents, equipment, fixtures, general intangibles, instruments, inventory, investment property, patents, proceeds, remittances, secured obligations, trademarks, trade secrets, insurance proceeds

and commercial tort claims that are part of the Collateral whether such Collateral come into existence before, during or after the receivership. In order to exercise the authority conferred upon it under this Paragraph and more generally by this Order, the Receiver is hereby vested with the standing, power and authority to, but without the liability or obligation to, execute documents, instruments and resolutions in connection with sale of the Collateral. The Receiver may apply to this Court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill its duties.

21. The Receiver is authorized in its discretion to employ, fix and pay the compensation, salaries and wages of all managers, agents, employees, servants as may be advisable or necessary in its judgment for the operation, management, conduct, control or custody of the Collateral. The Receiver may employ counsel for the Receiver for the limited purpose of advising the Receiver in matters relating to securing the receivership. Counsel for the Receiver may be paid on a regular basis from the Collateral. Counsel for the Receiver so appointed shall submit statements of fees for services rendered and costs incurred, excluding itemized time entries, to Lender and other interested parties on a monthly basis. Upon the request of the Lender, or upon the Court's *sua sponte* request, counsel for the Receiver shall submit detailed time entries to the Court for *in camera* review.

22. To the extent Entity Defendants have not already done so, the Receiver is authorized to terminate any or all of the Entity Defendants' employees who have responsibilities with respect to the Collateral, only with respect to such duties and responsibilities with respect to the Collateral. The Receiver, its officers, directors, agents, representatives, counsel, consultants and employees (the "Receiver Entities") shall have no personal liability for any liabilities arising from any such termination. The Receiver is authorized in its discretion to employ, fix and pay

the compensation, salaries and wages of all managers, agents, employees, servants as may be advisable or necessary in its judgment for the operation, management, conduct, control or custody of the Collateral.

23. The Receiver or its designee shall conduct an inspection of the Collateral and shall perform a complete inventory of the Collateral coming under its control or possession pursuant to this Order. Such inspection and inventory shall be conducted with the cooperation of the Lender, the Entity Defendants and their agents, employees or other representatives, and the Receiver or its designee shall file with the Clerk's Office a true and complete inventory of the property and preliminary proposed plan of liquidation of the Collateral under oath within forty-five (45) days after the date of this Order. The Receiver or its designee shall keep a true and accurate account of any and all receipts and expenditures and shall, so often as the Court directs, file with the Court an Inventory and Account under oath, of any additional property or effects which it has discovered which shall have come into its hands since its appointment, and of the amount remaining in its hands or invested by it, and of the manner in which the same is secured or invested, stating the balance due from or to it at the time of rendering its last account, the receipts and expenditure since that time. The account shall include detailed information concerning income, expenses, payables and receivables.

24. All rents, issues, profits, revenues, income or other payments which are now or hereafter become due (hereinafter collectively, the "Accounts") with respect to all or any portion of the Collateral whether pursuant to oral or written agreements shall be remitted by the account debtors directly to the Receiver.

25. The Receiver shall have no personal liability for any environmental liabilities arising out of or relating to the Entity Defendants or their businesses or the Collateral.

26. Sales of the Collateral pursuant hereto shall be on the terms and conditions as are reasonable under Article 9 of the Uniform Commercial Code or other applicable law.

27. The Receiver may obtain liability insurance to protect itself in carrying out its duties hereunder with a policy limit of not more than $1,000,000 and the premium therefore should be paid from the Collateral.

28. The Receiver shall have no duty or obligation to prepare and/or file any tax or pay any taxes of the Entity Defendants that are or may become due, with the exception of payroll, employment and similar taxes or withholdings for those of the Entity Defendants' employees who are retained by the Receiver after the appointment Effective Date.

29. The Receiver, its employees and counsel are entitled to rely on all outstanding rules of law and Court Orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment or decree. In no event shall the Receiver be liable to anyone for good faith compliance with its duties and responsibilities, nor shall the Receiver, its employees or advisors be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence or reckless disregard of their duties.

30. The Receiver is authorized and directed to remit the proceeds of the operation of the Collateral and the sale of the Collateral, including the proceeds of accounts receivable as may remain after the payment of the ordinary and necessary business expenses of the receivership to Lender, other lienholders, and other creditors in order of priority.

31. The Receiver may, if it so chooses, permit existing insurance coverage for the Collateral to remain in force until the expiration of the current paid up term under such policy or policies and shall notify the insurance carriers immediately of the appointment of the Receiver

hereby and request that the Receiver be added to the insurance policy or policies as an Additional Insured thereunder. Upon the expiration of the paid up portion or such policy or policies, the Receiver shall have the responsibility for keeping the Collateral insured and may as an option keep in force the existing insurance coverages or obtain new coverages for the Collateral, each of which coverages shall name the Receiver as an Additional Insured thereunder.

32. The Entity Defendants and their directors, equity owners, officers, agents, employees or other representatives under this Order are hereby directed to use their best efforts to ensure a smooth transition of the preservation and liquidation of the Collateral to the Receiver or its designee and the Entity Defendants shall cooperate with the Receiver or its designee in consummating such transition.

33. The Entity Defendants and their directors, equity owners, officers, agents, employees or other representatives are hereby enjoined from interfering in any manner with the Receiver in its management and liquidation of the Collateral.

34. The Receiver shall not be bound by all or any contracts, agreements, understandings or other commitments the Entity Defendants had, or may have with third parties, whether oral or written as it relates to the Collateral. The Receiver may, by an affirmative written ratification executed by the Receiver, agree to become bound to any such contracts, agreements, understandings or other commitments or may agree to enter into any new or amended contracts, agreements, understandings or other commitments. Nothing in this Order constitutes or shall be construed to constitute an assumption of any of the leases, contracts or agreements currently existing with respect to the Collateral by the Receiver or a waiver by the Receiver of any default under any such lease, contract or agreement.

35. The receivership authorized and created hereby may be terminated at any time by the Lender or Receiver filing with the Court, serving upon the Entity Defendants and other parties in interest a Motion to Terminate Appointment of Receiver. Upon proper notice thereof and upon hearing and determination of this Court that the purposes of this receivership have been served, this Court may terminate the receivership. Unless otherwise expressly provided therein, the entry of a judgment on the Complaint shall not operate as a termination of the Receivership.

BY THE COURT:

_____
U.S.D.J.

AGREED TO BY:

STEVENS & LEE

/s/ Wesley R. Kelso
Wesley R. Kelso
Attorneys for AH Rental Properties, LLC,
Mills Farm, L.L.C. and
AH Land Holdings, LLC f/k/a
AH Land Development, LLC